23-344-cv
Kelley v. Richford Health Ctr., Inc.

# United States Court of Appeals
# for the Second Circuit

August Term, 2023

(Argued: February 27, 2024    Decided: August 20, 2024)

Docket No. 23-344-cv

_____

BRUCE KELLEY, NANCY KELLEY,

*Plaintiffs-Appellees,*

v.

RICHFORD HEALTH CENTER, INC. d/b/a NORTHERN TIER CENTER FOR
HEALTH,

*Defendant-Appellant,*

TEIG MARCO, M.D.,

*Defendant-Cross-Defendant-Appellant,*

FRANKLIN COUNTY REHABILITATION CENTER, FRANKLIN COUNTY
REHABILITATION & ADULT CARE CENTER, KRISTY
JANKOWSKI, R.N., MARION PERRY, R.N., KYLA APLEY, L.N.A.,

*Defendants-Appellees,*

FRANKLIN COUNTY REHAB CENTER, LLC,

*Defendant-Cross-Claimant-Appellee,*

THE UNIVERSITY OF VERMONT MEDICAL CENTER, INC., STEPHEN RANNEY, M.D., ANDREW STANLEY, M.D.,

*Defendants,*

UNITED STATES OF AMERICA,

*Appellee.*[*]

_____

Before:

      CALABRESI, CABRANES, and LOHIER, *Circuit Judges.*

      Richford Health Center, Inc. and its employee Dr. Teig Marco appeal from an order of the United States District Court for the District of Vermont (Crawford, *C.J.*) remanding a medical malpractice case against them to state court. Bruce Kelley ("Kelley") and his spouse, Nancy Kelley, brought this lawsuit in state court, alleging that Dr. Marco's negligent treatment paralyzed him. The United States intervened and removed the case to federal district court on the ground that Richford Health Center is a "deemed" federal employee under the Federally Supported Health Centers Assistance Act (FSHCAA), 42 U.S.C. § 233(g)–(n). The District Court remanded the case after determining that it lacked subject matter jurisdiction because the FSHCAA did not apply to Dr. Marco's treatment of Kelley. The District Court correctly remanded the case to state court. **AFFIRMED**.

<div style="margin-left:40%">

MATTHEW SIDNEY FREEDUS (Rosie Dawn Griffin, *on the brief*), Feldesman Tucker Leifer Fidell LLP, Washington, DC, *for Appellants.*

Vincent Illuzzi, Orleans, VT, *for Plaintiffs-Appellees.*

Kaveh Shahi, Cleary Shahi & Aicher, P.C., Rutland, VT, *for Defendants-Appellees and Defendant-Cross-Claimant-*

</div>

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

*Appellee.*

DANA KAERSVANG, United States Department of Justice (Mark B. Stern, Brian M. Boynton, United States Department of Justice; Carla B. Freedman, United States Attorney for the Northern District of New York; Samuel R. Bagenstos, Michael I. Goulding, Meredith Torres, United States Department of Health and Human Services, *on the brief*), Washington, DC, *for Appellee.*

LOHIER, *Circuit Judge*:

Bruce Kelley ("Kelley") and his spouse, Nancy Kelley, filed this medical malpractice suit in Vermont state court after Kelley was paralyzed from the waist down while residing in the Franklin County Rehabilitation Center ("FCRC" or the "Rehabilitation Center"), a skilled nursing facility. The Kelleys blame the injury on Dr. Teig Marco, who treated Kelley in the facility under a contract between FCRC and Dr. Marco's employer, the Richford Health Center, Inc. ("RHC" or the "Health Center").

As a federally funded community health center, RHC is "deemed" to be a member of the Public Health Service under the Federally Supported Health Centers Assistance Act (FSHCAA), 42 U.S.C. § 233(g)–(n). Deemed health centers and their employees "are immune from malpractice suits for acts or omissions that occur within the scope of their [deemed] employment." *Agyin v.*

3

*Razmzan*, 986 F.3d 168, 171 (2d Cir. 2021).

The FSHCAA makes the Federal Tort Claims Act (FTCA) "the exclusive remedy for specified actions against members of the Public Health Service" (including deemed health centers) and protects "employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead." *Cuoco v. Moritsugu*, 222 F.3d 99, 107–08 (2d Cir. 2000). As relevant here, the statute's protection covers malpractice claims that arise from a deemed health center's provision of medical services to patients and, in limited circumstances, nonpatients too. 42 U.S.C. § 233(g)(1)(B).

After the Kelleys filed their lawsuit against the Rehabilitation Center, the Health Center, and Dr. Marco, among others, the Government invoked the FSHCAA and the FTCA to intervene, remove the case to federal court, and substitute itself as the sole proper defendant. The Rehabilitation Center opposed and filed a motion to remand. Following an evidentiary hearing, the Government decided that the FSHCAA did not cover Dr. Marco's treatment of Kelley after all, and urged that the matter be remanded to state court. The

4

District Court (Crawford, *C.J.*) agreed and granted the motion to remand.   We

**AFFIRM**.

BACKGROUND

## I.   Statutory Framework

The FSHCAA authorizes the United States Department of Health and Human Services ("HHS") to deem federally qualified health centers as Public Health Service members.   The designation entitles the centers and their employees to FTCA coverage for certain medical malpractice suits.   42 U.S.C. § 233(g); *see Agyin*, 986 F.3d at 172.   HHS's deeming decision is limited in scope. It applies only to services provided to "all patients of the [federally qualified health center], and . . . subject to [several conditions], to individuals who are not patients of the entity."   42 U.S.C. § 233(g)(1)(B).   In particular, HHS can extend its deeming determination to cover medical services to nonpatients if the federally qualified health center submits an application to HHS before providing those services.   *See id.* § 233(g)(1)(C).

HHS has carved out narrow exceptions to this requirement.   If the employees of a deemed health center provide either "after-hours coverage" for a non-deemed community health center's patients or emergency treatment to any

nonpatient, those activities will be covered by HHS's deeming decision without the need to apply for prior approval.   42 C.F.R. § 6.6(e)(4).   But if the center's employees provide medical services to nonpatients that do not "fit[] squarely" within the examples listed in Section 6.6(e)(4) of HHS's regulations, then the center must seek a "particularized determination of coverage" from HHS.   *Id*.

## II.   Factual Background

RHC applied for federal funding (and the corresponding malpractice coverage) under the FSHCAA in January 2017.   In its application, RHC proposed hiring a doctor to provide primary care services at skilled nursing and rehabilitation facilities "[i]n order to continue caring for *our patients*."   App'x 279 (emphasis added).   RHC also described its bid to provide medical services at rehabilitation centers as ensuring that its employees could "deliver health care services to *patients* confined to rehabilitation centers."   App'x 392 (emphasis added).   HHS approved the Health Center's grant application and deemed it a Public Health Service employee on August 31, 2017.

On October 1, 2017, RHC hired Dr. Marco to provide medical services to patients at local skilled nursing and rehabilitation facilities.   That same day, Dr. Marco entered into a contract with FCRC to provide medical director services "as

a [Richford Health Center] employee." App'x 228.

Dr. Marco admitted Kelley as a new patient to FCRC about six months later. Things quickly went awry. The Kelleys allege that two FCRC nurses injured Kelley's back and that another nurse and Dr. Marco failed to properly treat the injury. As Kelley's condition worsened, Dr. Marco prescribed pain medication in lieu of ordering or conducting a full neurological exam. Dr. Marco's failure to provide the necessary neurological treatment, the Kelleys claim, resulted in a permanent spinal cord injury and paralysis from the waist down.

## III.    Procedural History

The Kelleys filed suit in Vermont state court in February 2021. In November 2021, the United States Attorney for the Northern District of New York[1] removed the action to federal court based on both the FSHCAA and the federal officer removal statute, 28 U.S.C. § 1442. The Government certified, pursuant to the FSHCAA, that Richford Health Center was a "deemed" entity eligible for FTCA coverage and that Dr. Marco was an employee of the Health

---

[1] The United States Attorney's Office for the District of Vermont had a conflict, so the United States Attorney's Office for the Northern District of New York took its place.

Center acting within the scope of his employment when he treated Kelley. The Government accordingly moved to substitute itself as the sole defendant and to dismiss the case for failure to exhaust administrative remedies under the FTCA. Franklin County Rehabilitation Center moved to remand and, along with the Kelleys, opposed the motions to substitute and dismiss.

The Government then changed its mind. Initially, the Government revised its stated justification for the claim that Kelley's treatment by Dr. Marco was covered by the FTCA. Kelley, it acknowledged, was never in fact a Health Center patient. Even so, it explained, Kelley's treatment was entitled to FTCA coverage without HHS's particularized determination of coverage because it occurred pursuant to an after-hours coverage agreement or on an emergency basis.

A subsequent evidentiary hearing prompted the Government to retreat even further. On December 12, 2022, it retracted its earlier certification that Dr. Marco's treatment fell within RHC's deemed federal employment and its claim that the FTCA provided the only remedy for the Kelleys' malpractice claim. It then withdrew its motions to substitute and to dismiss, and consented to remand the action to Vermont state court. RHC and Dr. Marco opposed remand, but the

8

District Court sided with the Government, explaining that Dr. Marco's treatment was not covered by HHS's deeming decision for three reasons: First, Kelley was not a Health Center patient; second, the treatment fell outside the enumerated examples of services to nonpatients that qualify for FTCA coverage; and third, RHC never applied for a particularized coverage determination as to Dr. Marco's treatment of FCRC patients. Because the only basis for subject matter jurisdiction in this case "was the substitution of the United States as the defendant and the application of federal law through the FSHCAA and the FTCA," *Kelley v. Franklin Cnty. Rehab Ctr., LLC*, No. 21-CV-278, 2023 WL 2529926, at *7 (D. Vt. Feb. 9, 2023) (Crawford, *C.J.*), the District Court remanded the case for lack of jurisdiction.

## DISCUSSION

### I. Appellate Jurisdiction

Before proceeding to the merits, we must first determine whether we have jurisdiction to consider this appeal. The Kelleys and FCRC argue that we do not. "Since at least 1949, federal appellate courts have generally lacked the power to review a district court order remanding a case to state court. But like most rules, this one has accrued exceptions with time." *BP P.L.C. v. Mayor of*

*Balt.*, 141 S. Ct. 1532, 1536 (2021) (citing Act of May 24, 1949, § 84, 63 Stat. 102). "In 2011, Congress added a[n] . . . exception for suits against federal officers or agencies removed pursuant to 28 U.S.C. § 1442," *id.*, which "authorizes 'the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof' to remove actions 'for or relating to any act under color of such office,'" *Agyin*, 986 F.3d at 174 (cleaned up) (quoting 28 U.S.C. § 1442). "Here, . . . Congress has deemed it appropriate to allow appellate review before a district court may remand a case to state court." *BP P.L.C.*, 141 S. Ct. at 1536 (citing Removal Clarification Act, § 2, 125 Stat. 545–546 (amending 28 U.S.C. §§ 1442 and 1447)). 28 U.S.C. § 1447(d) thus provides that "an order remanding a case to the State court from which it was removed pursuant to [28 U.S.C. §] 1442 . . . shall be reviewable by appeal . . . ."

A "colorable claim for removal under § 1442" is all it takes to trigger our review of a remand order, even if we ultimately determine that removal was improper. *Agyin*, 986 F.3d at 174. To invoke Section 1442, RHC and Dr. Marco must demonstrate that Dr. Marco "is a person under the statute," "acted under color of federal office" and that he "has a colorable federal defense." *Id.* (quotation marks omitted).

10

With that in mind, we conclude that the Government's notice of removal "asserted a colorable claim for removal under § 1442" because it certified that RHC was a deemed entity and that Dr. Marco's treatment of Kelley fell within the scope of his employment. *See id.* at 174–78, 181. First, RHC and Dr. Marco had colorable claims to immunity from suit under the FTCA, which provides a colorable federal defense. "A merely colorable defense is sufficient to assure the federal court that it has jurisdiction to adjudicate the case." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (quotation marks omitted); *see Agyin*, 986 F.3d at 174 (noting that we consider whether the defendant has raised a colorable federal defense at the time of removal). And because RHC was a federally deemed health center and Dr. Marco's treatment of Kelley arguably fell within the scope of his employment with RHC, Dr. Marco likewise has at least a colorable argument that he was "acting under color of" his deemed federal office. *See Agyin*, 986 F.3d at 176–77, 181.[2]

Under 28 U.S.C. § 1446(b)(2)(B), "[e]ach defendant shall have 30 days after

---

[2] The parties do not dispute that RHC and Dr. Marco are "persons" for purposes of § 1442. *See* 1 U.S.C. § 1 ("'[P]erson' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.").

receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal." FCRC and the Kelleys argue that, colorable defense or not, the Government's notice of removal was procedurally defective because it was filed more than thirty days after the defendants' receipt of the summons and complaint in this case. We have explained, though, that the "thirty-day time limitation is . . . not jurisdictional." *Agyin*, 986 F.3d at 182 (quotation marks omitted). "Therefore, if an opposing party does not object to an untimely notice of removal by timely filing a motion to remand, the objection is waived." *Id.* Here, "no party filed such a motion or otherwise objected to the timeliness" of the Government's notice of removal. *Id.* at 183. So even if the Government's "removal under § 1442 was untimely, any objection to that untimeliness has been waived." *Id.*

FCRC and the Kelleys also challenge our appellate jurisdiction because the District Court premised its remand order on the inapplicability of the FSHCAA, 42 U.S.C. § 233(c), not on the federal officer removal statute. Their challenge is misplaced. Regardless of the District Court's stated reasons for remanding the matter to Vermont state court, we retain jurisdiction to review its remand order as long as the case is removed at least in part under Section 1442. *See BP P.L.C.*,

12

141 S. Ct. at 1538.

Finally, the Kelleys contend that RHC and Dr. Marco lack standing to appeal the remand order because they were not the "party" that removed the case in the first instance. This argument is foreclosed by the plain text of Section 1447, which provides that an order remanding a case removed under Section 1442 shall be reviewable on appeal, without limiting that review based on which party removed the case. 28 U.S.C. § 1447(d). Accordingly, we may review the District Court's remand order on appeal.

## II. Merits of the Remand Order

We review the merits of the remand order without deferring to the District Court's decision. See *Agyin*, 986 F.3d at 173–74.

As the District Court explained, "[t]he deeming decision is highly consequential for [a federally qualified health center] because it makes it unnecessary to purchase liability insurance for many types of claims. Instead, the United States becomes the insurer of the [federally qualified health center], providing a defense and indemnity within the procedures of the FTCA." *Kelley*, 2023 WL 2529926, at *6.

The FSHCAA makes clear that the scope of HHS's deeming decision

13

depends on the patient's status.  In general, the deeming decision — and the corresponding FTCA coverage for malpractice claims — is limited to medical treatment that a deemed entity (such as the Health Center) and its employees provide to its patients.  42 U.S.C. § 233(g)(1)(B).  Coverage extends to nonpatients only if the treatment meets specified statutory criteria.  *See id.* § 233(g)(1)(B), (C).

RHC and Dr. Marco dispute a reading of the FSHCAA that limits FTCA immunity to claims arising from medical services to patients of deemed entities. They insist that patient status is irrelevant to the scope of FTCA immunity. Immunity attaches here, they claim, as long as Dr. Marco treated Kelley within the scope of his employment with the Health Center and regardless of Kelley's status as a nonpatient of the Health Center.  But this interpretation ignores the text of the FSHCAA, which ties an entity's deemed federal employment to the patient/nonpatient status of the individual receiving treatment.

The parties agree that Kelley was not a Health Center patient before Dr. Marco treated him.  The Appellants contend, though, that Kelley became a Health Center patient because Dr. Marco's treatment fell within the scope of his employment for RHC.  This argument again runs headlong against the

14

FSHCAA's plain text, which limits HHS's deeming decision to "patients of the *entity*," not patients of the entity's employees. *See* 42 U.S.C. § 233(g)(1)(B)(i) (emphasis added). Patients of a deemed entity's doctors are not necessarily patients of the entity itself. Otherwise, the FSHCAA's distinction between coverage of services to *patients* on the one hand and coverage of services to *nonpatients* on the other would have no consequence. The Appellants' interpretation would upend the statutory distinction between patients and nonpatients and improperly convert virtually every nonpatient treated by a health center doctor into a patient under the FSHCAA. Accordingly, we agree with the District Court that Kelley was not a Health Center patient.

FTCA coverage thus applies to Dr. Marco's treatment of Kelley only if the treatment satisfies one or more of the FSHCAA's specified statutory criteria for services to nonpatients described in HHS's regulations, 42 C.F.R. § 6.6(e)(4). But Dr. Marco's treatment does not "fit[] squarely" within any of the nonpatient-related activities or arrangements described in those regulations. *Id.* Take, for example, Section 6.6(e)(4)(iii), which covers treatment of non-health center patients so long as they are "part of a health center's arrangement with local community providers for *after-hours coverage* of its patients." 42 C.F.R.

15

§ 6.6(e)(4)(iii) (emphasis added). RHC employed Dr. Marco as the full-time medical director of the Rehabilitation Center, not for periodic, after-hours coverage. Another HHS regulation contemplates coverage for a health center provider that is "asked, called upon, or undertakes, at or near [its] location and as the result of a non-health center patient's emergency situation, to temporarily treat or assist in treating that non-health center patient." *Id.* § 6.6(e)(4)(iv). But it appears to be undisputed that Kelley's pain did not present a medical emergency and that Dr. Marco therefore did not treat him in an emergency.

Finally, HHS regulations provide that a health center planning to offer services that do not fit neatly into any of the descriptions listed in Section 6.6(e)(4) may nonetheless "seek a particularized determination of coverage" in order to obtain FTCA immunity for those services. *Id.* § 6.6(e)(4). But RHC did not apply for a "particularized determination of coverage" at any point, let alone before Dr. Marco began treating Rehabilitation Center patients.

We therefore conclude that Dr. Marco's treatment of Kelley is not covered by HHS's deeming decision, and accordingly that Dr. Marco and RHC are not entitled to FTCA medical malpractice liability coverage for the Kelleys' claim.

**CONCLUSION**

We have considered the Appellants' remaining arguments and conclude that they are without merit.  For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.